UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA K. THRELKELD,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 2:23-cv-02199-CSK SS<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 11, 17) |

Plaintiff Gloria Kaye Threlkeld seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for disability insurance benefits.[1] In her summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, Plaintiff's motion is DENIED, the Commissioner's cross-motion is GRANTED, and the final decision of the Commissioner is AFFIRMED.

/ / /

---

[1] This action was referred to the undersigned under Local Rule 302(c)(15) and proceeds on the consent of all parties. (ECF Nos. 4, 6, 7.)

1

## I. SOCIAL SECURITY CASES:  FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual seeks Social Security disability benefits (the "claimant"), the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. § 404.900(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. § 404.929. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. § 404.1520(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review of the

Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

II.   **FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS**

On March 6, 2017, Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging an inability to work since February 2, 2017. Administrative Transcript ("AT") 394-400, 414 (available at ECF No. 8). Plaintiff claimed disability due to hypertension, adjustment disorder with mixed anxiety and depressed mood, vitamin D deficiency, and congestive heart failure. *Id.* Plaintiff's application was denied initially and upon reconsideration; and she sought review before an ALJ. AT 329-30. Plaintiff appeared with counsel at a July 23, 2018

3

hearing before an ALJ, where Plaintiff testified about her impairments and a vocational expert testified about hypothetical available jobs in the national economy. AT 39-66. The ALJ issued a decision denying Plaintiff's claim for benefits on October 11, 2018. AT 20-37. On December 7, 2018, Plaintiff requested review with the Appeals Council. AT 388-93. The Appeals Council denied review, which made the ALJ's decision the final decision of the Commissioner, on September 9, 2019. AT 1-7.

On November 1, 2019, Plaintiff commenced a civil action in the Eastern District of California. AT 1079-90. On August 28, 2020, the district court reversed the ALJ's decision and remanded for further proceedings. AT 1091-1105. The court addressed whether the ALJ erred by rejecting the opinion of consultative psychiatric examiner Dr. Les. P. Kalman, M.D., Psy.D. AT 1097; *Threlkeld v. Saul*, 2020 WL 5107626 (E.D. Cal. Aug. 31, 2020). The Court found that the ALJ erred by assigning little weight to Dr. Kalman's opinion. AT 1100-01. The court found the statement that "the claimant has had little mental health treatment and no professional treatment during the period at issue" was inaccurate and an inappropriate reason to discount the opinion because the record showed that Plaintiff sought ongoing treatment from her primary care physician, she was treated with an anti-depressant, and Plaintiff cited financial concerns regarding obtaining mental health treatment. *Id.* The court also found that the ALJ's statement that "other than being able to recall only one of three objects and only two of the past five presidents during Dr. Kalman's examination, the claimant's mental status examination was otherwise generally unremarkable" was inaccurate and ignored significant findings. AT 1101. The court found that these three findings were improper reasons to invalidate the entire opinion when Dr. Kalman made other findings about Plaintiff, including that her mood was "'neutral, anxious, depressed, perplexed' with a labile affect." *Id.*

On remand, a supplemental hearing was held on Plaintiff's claim on February 21, 2021. AT 1003-36. On March 15, 2021, a different ALJ issued a decision denying Plaintiff's claim. AT 1111-27. Plaintiff requested review with the Appeals Council on March 24, 2021 (AT 1232), which granted review, assumed jurisdiction, and remanded

Plaintiff's claim on May 10, 2022 (AT 1135-37). On February 8, 2023, a hearing was held on Plaintiff's claim. AT 1037-53. The ALJ again denied Plaintiff's claim. AT 972-78.

On May 12, 2023, the ALJ issued a decision finding Plaintiff was not disabled. AT 982-95. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 2, 2016. AT 985. At step two, the ALJ determined Plaintiff had the following severe impairments: non-obstructive coronary artery disease, congestive heart failure, polysubstance abuse disorder, adjustment disorder with mixed anxiety and depressed mood. *Id.* At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any Listing. *Id.* (citing 20 C.F.R Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered Listings 12.04 (depression) and 12.06 (anxiety) for Plaintiff's mental impairments, examining the "Paragraph B" and "Paragraph C" criteria for the mental impairments.[2] The ALJ found Plaintiff moderately limited in interacting with others and concentrating, persisting or maintaining pace; she also found Plaintiff mildly limited in understanding, remembering or applying information and adapting or managing oneself. AT 986-87. The ALJ considered the "Paragraph C" criteria, and found no indication that Plaintiff has marginal adjustment. AT 987.

The ALJ then found Plaintiff had the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b)), except that Plaintiff is able to:

> [L]ift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; is capable of understanding, remembering, and carrying out simple tasks; is capable of interacting appropriately with supervisors and coworkers in a non-public setting; is able to make simple, work-related decisions; is able to adhere to

---

[2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b. "Paragraph C" of listings including 12.04 and 12.06, provides criteria used to evaluate "serious and persistent mental disorders." To be "serious and persistent" there must be a medically documented history of the existence of the mental disorder over a period of at least 2 years. *Id.*, sub. A.2.c.

5

        basic safety rules; and adjust to changes in a routine work setting.

AT 987. The ALJ considered Plaintiff's symptoms and opinion evidence. AT 988-89. The ALJ considered the opinion evidence of State agency medical consultant L. Huynh, MD; State agency medical consultant Y. Ruo, MD; State agency medical consultant D. Funkenstein, MD; State agency medical consultant N. Haroun, MD; consultative examiner Dr. Kalman; and Plaintiff's husband. AT 991-93.

        Based on the residual functional capacity, the ALJ determined at step four that Plaintiff was incapable of performing past relevant work. AT 993. However, at step five, the ALJ found Plaintiff capable of performing other jobs in the national economy, including: (1) routing clerk; (2) cleaner, housekeeping; and (3) as a collator operator. AT 994.

        On June 5, 2023, the Appeals Council rejected Plaintiff's appeal. AT 972-78. Plaintiff filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 11, 18.)

## III.    ISSUES PRESENTED FOR REVIEW

        Plaintiff presents only one issue for review—that the ALJ erred by failing to provide specific and legitimate reasons for rejecting the examining medical opinion of Dr. Kalman. This is the only issue raised in Plaintiff's brief, therefore this is the only issue the Court will consider. *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994). Plaintiff seeks a remand for further proceedings. (ECF No. 11.) The Commissioner argues that substantial evidence supported the ALJ's evaluation of Dr. Kalman's opinion. (ECF No. 17.) Thus, the Commissioner contends the decision should be affirmed. (*Id.*)

## IV.    DISCUSSION

### A.    Relevant Medical Evidence

#### 1.    <u>Objective Medical Evidence</u>

        Plaintiff first presented to her primary care physician for mental health treatment on April 15, 2016 with concerns about her mood being down after moving from Arkansas

to California. AT 587. The claimant scored a 22, indicating severe depression, on a PHQ-9 scale. AT 590. Plaintiff was prescribed Fluoxetine (Prozac). *Id.* On April 28, 2016, Plaintiff saw Ashley Gunter Hill, Psy.D., a psychologist. AT 584. She reported that Plaintiff expressed symptoms of depression, anxiety, and uncontrolled crying. AT 585. Plaintiff stated that she was unable to find a job due to only finding temp positions and having a limited skill set. *Id.* Plaintiff described cutting her hair as a form of "self-sabotage" and described herself as "thin-skinned and sensitive," and bullied by her husband and mother. *Id.* She smoked marijuana three times a month despite knowing it could worsen her mental health symptoms. *Id.* Plaintiff reported a history of panic attacks. *Id.* Her responses to a PHQ-9 depression questionnaire correlated with moderately severe depression. *Id.* She was provided an order for a follow up appointment with mental health, but Dr. Hill noted that finances were a concern for plaintiff. *Id.* Plaintiff continued to take medication during the relevant period, but the associated treatment notes were for treatment of physical impairments (e.g. AT 515, 569, 611, 858).

### 2. Non-Examining Source Opinions

On August 23, 2017, Dr. Funkenstein, a State agency medical consultant, reviewed Plaintiff's records, and opined that she had moderate limitations in interactions with others, adaption, and concentration, persistence or pace. AT 285-87. Dr. Funkenstein opined that Plaintiff had moderate limitations on her abilities to maintain regular attendance, complete a normal workday, sustain an ordinary routine without special supervision, interact with others, and accept instructions. AT 290. Dr. Funkenstein concluded that despite these limitations, Plaintiff retained the residual functional capacity to perform simple tasks at an acceptable pace, interact with others, make simple work-related decisions, and adjust to changes in routine in a typical non-public workplace setting. AT 291. Dr. Funkenstein's opinion was given great weight by the ALJ. AT 992. The ALJ found that Dr. Funkenstein's opinion was consistent with Dr. Kalman's examination. *Id.*

On October 3, 2017, Dr. N. Haroun, a State agency medical consultant, reviewed the evidence in Plaintiff's file, and assigned no limitations in understanding, remembering, or applying information, mild limitations interacting with others, and no limitations in concentrating, persisting, or maintaining pace, or adapting or managing oneself. AT 301-02. Dr. Haroun assigned no severe mental impairment. *Id.* The ALJ gave this opinion less weight based on contradictory findings by the consultative examiner Dr. Kalman. AT 992.

### 3. Dr. Kalman's Examining Opinion

On August 18, 2017, Plaintiff presented to Dr. Kalman, a consultative examiner and a psychiatrist, for a psychiatric evaluation as part of her application for benefits. AT 659. Dr. Kalman did not review any records as part of his examination,[3] and instead, Dr. Kalman relied on plaintiff and found plaintiff to be a "fair historian." *Id.* Plaintiff reported being shaky, crying a lot, that her "skin is too thin" and she feels depressed, blue, down, hopeless, helpless, and worthless, along with mood swings with occasional elevated mood and racing thoughts. *Id.* During the examination, Plaintiff was cooperative, spoke normally, and made good eye contact. AT 660. Plaintiff was properly oriented; could do serial 3s with no errors; could perform simple math; exhibited average intelligence; could understand abstractions; and exhibited fair insight. *Id.* She appeared anxious and depressed; denied suicidal or homicidal thoughts; had a logical thought process, and had normal thought content. AT 661.

Plaintiff reported that she could shop, cook, housekeep, manage her own transportation, perform self-care, and pay her own bills, but she also reported being estranged from family and having no friends. *Id.* Plaintiff described a typical day as

---

[3] In the ALJ's opinion, she states that Dr. Kalman did not "examine any evidence after August 2017." AT 993. This seems to indicate that the ALJ found that Dr. Kalman reviewed Plaintiff's medical records before examining Plaintiff. However, the record does not indicate that Dr. Kalman reviewed Plaintiff's medical records before examining Plaintiff, and the prior district court found that Dr. Kalman did not review any records as part of his exam. AT 1098; *see* AT 659 (listing the source of information for the report as "the patient who was a fair historian," and not identifying that he reviewed any records).

talking to her cat, and keeping distracted with the internet, reading, and looking at pictures. *Id.* Plaintiff was tearful. *Id.* Based on Plaintiff's mood swings and her reports that she had difficulty maintaining employment or getting along with others, Dr. Kalman opined that Plaintiff could "perform simple written and oral instructions," but had decreased ability to maintain regular attendance, work without special supervision, complete a normal workday, accept instruction from supervisors, interact with others and deal with stress in the workplace. AT 661-62. Dr. Kalman diagnosed plaintiff with Bipolar Disorder, depressed. AT 662.

The ALJ assigned Dr. Kalman's opinion little weight. AT 993. Though this ALJ decision also gave Dr. Kalman's opinion little weight, it is significant to note that the ALJ's analysis of Dr. Kalman's opinion here differs significantly from the first ALJ's analysis that was rejected by the district court. Here, the ALJ provided four reasons. First, Dr. Kalman only examined Plaintiff on one occasion and did not treat Plaintiff or "examine any evidence after 2017." *Id.* Second, Dr. Kalman's opinion is "vague and not worded in vocationally relevant terms." *Id.* Third, Dr. Kalman's "narrative opinion is not consistent with his examination report of the [Plaintiff], in which he noted some anxiety and lability but then went on to note relatively normal mental status findings." *Id.* Lastly, "this opinion is not consistent with the [Plaintiff's] lack of mental health treatment, aside from medications prescribed by her primary care physician." *Id.*

### B. Legal Standards for Medical Opinion Evidence

For cases filed before March 27, 2017 like this one, the ALJ is required to consider a number of factors in deciding the weight given to any medical opinion. These include the examining relationship, the length of the treatment relationship and frequency of examination, the amount of support detailed in the opinion, the consistency of the opinion with the record, specialization of the medical professional, and any other factors deemed relevant. 20 C.F.R. § 404.1527(c)(1)-(6). Additionally, in the Ninth Circuit, the weight afforded a medical opinion depends on whether it was proffered by a treating, examining, or non-examining professional. *Holohan v. Massanari*, 246 F.3d

1195, 1201-02 (9th Cir. 2001); *Lester*, 81 F.3d at 830. This also depends on whether the opinion was offered from an acceptable or non-acceptable medical source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

For acceptable medical sources in pre-March 27, 2017 cases, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202. An ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). However, if a treating professional's opinion is contradicted by an examining professional's opinion with support in the record, the ALJ is to resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831; *but see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

In order to evaluate whether an ALJ properly rejected a contradicted opinion from an acceptable medical source, the court considers whether other contradictory opinions are in the record and whether clinical findings support the opinions. *Lester*, 81 F.3d at 831. Under the pre-March 27, 2017 framework, an ALJ must provide "specific and legitimate" reasons to reject the contradicted opinion of a treating or examining doctor. *Id.* at 830-31. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. However, the ALJ is not required to give a medical opinion any weight if it is conclusory or supported

by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).

The ALJ is not required to give any special significance to a medical source's statement that a claimant is "disabled" or "unable to work," as this is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see also Boardman v. Astrue*, 286 F. App'x 397, 399 (9th Cir. 2008) (physician's opinion that a claimant is "disabled" is "irrelevant at best" and "not entitled to special significance").

### C. The ALJ Did Not Err in Assessing Dr. Kalman's Opinion

Plaintiff argues that the ALJ did not articulate specific and legitimate reasons for rejecting Dr. Kalman's examining opinion. Both parties correctly apply the specific and legitimate standard for contradicted medical opinions. *See* Pl. MSJ at 7; Def. MSJ at 4; *Lester*, 81 F.3d at 830-31.

#### 1. One Time Examination

The first reason the ALJ provides for giving Dr. Kalman's opinion little weight is that Dr. Kalman only examined Plaintiff on one occasion and did not treat Plaintiff or examine any evidence after August 2017. These are not proper reasons to discount Dr. Kalman's opinion. Opinions of examining medical sources tend to be based on only one examination. *See Hartje v. Astrue*, 2010 WL 3220615, at *13 (W.D. Wash. Aug. 13, 2010); *Sorrell v. Colvin*, 2015 WL 1152781, at *7 (N.D. Cal. Mar. 13, 2015). Additionally, the ALJ states that Dr. Kalman did not examine any evidence after August 2017. AT 993. However, Dr. Funkenstein's report is also from August 2017, and Dr. Haroun's report is from October 2017. AT 992; *see* AT 286-87, 301-02. While both Dr. Funkenstein and Dr. Haroun also examined Dr. Kalman's report (AT 280-82, 297-300), there is no evidence that either had access to records after October 2017. The fact that Dr. Kalman did not examine records after August 2017 is not a valid reason to reject his opinion, especially because the two doctors who the ALJ weighted more heavily also only reviewed records up to that time or a similar time. *See Raynoldson v. Commissioner of Social Security*, 649 F. Supp. 3d 1114, 1122 (W.D. Wash. 2023) (finding the ALJ erred in rejecting examining doctor's opinion because he did not review the entire record when

the two other doctors the ALJ found persuasive also did not review the entire record). Thus, this is not a specific and legitimate reason to reject Dr. Kalman's opinion.

### 2. <u>Vague and Not Worded in Vocationally Relevant Terms</u>

The second reason the ALJ provides for giving Dr. Kalman's opinion little weight is that his opinion is "vague and not worded in vocationally relevant terms." Plaintiff argues that while the phrase "decreased ability" may be considered vague, this is not a valid reason to reject Dr. Kalman's opinion because it is supported by his examination. Pl. MSJ 11. Plaintiff also argues that the Court in 2020 directed the ALJ to take action consistent with the order of remand, "which undoubtedly included clarification of the term 'decreased ability.'" *Id.* Finally, Plaintiff argues that the ALJ has a duty to develop the record when there is ambiguous evidence. *Id.* Defendant argues that Dr. Kalman did not present an opinion with concrete functional limitations and that the ALJ was not required to recontact Dr. Kalman or further develop the record. Def. MSJ at 6.

The ALJ properly discounted Dr. Kalman's opinion on this ground. An ALJ does not need to accept an opinion that is vague and that does not specify limitations in a meaningful fashion. *See Clarinda G. v. Kijakazi*, 2022 WL 17227842, at *4 (E.D. Wash. Sept. 27, 2022) (citing *Ford*, 950 F.3d at 1156). Dr. Kalman's opinion refers repeatedly to Plaintiff's "decreased ability" to do things such as maintain regular attendance in the workplace and consistently perform work activities, perform work activities without special or additional supervision, and complete a normal work day or work week with interruption. AT 661-61. But it is unclear what "decreased ability" actually means because Dr. Kalman does not specify limitations in a meaningful way. *See Clarinda G.*, 2022 WL 17227842 at *4; *Hunt v. Colvin*, 954 F. Supp. 2d 1181, 1188 (W.D. Wash. 2013).

Though the ALJ did find Dr. Kalman's opinion to be vague, the ALJ was not required to further develop the record because the record and evidence were adequate to allow the ALJ to properly evaluate it. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (holding that the "ALJ's duty to develop the record further is triggered only

when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Hunt*, 954 F. Supp. 2d at 1188. Further, Plaintiff's argument regarding the district court's 2020 decision fails because the district court did not address the need to clarify Dr. Kalman's use of the phrase "decreased ability" or whether Dr. Kalman's use of the phrase "decreased ability" rendered his opinion vague. *See* AT 1100-01. The district court addressed the *first ALJ*'s characterization of Dr. Kalman's opinion, not the language Dr. Kalman himself used. *See id*. Thus, this is a specific and legitimate reason to reject Dr. Kalman's opinion.

### 3.     Opinion Is Inconsistent with Report

The third reason that the ALJ provides for giving Dr. Kalman's opinion little weight is that his "narrative opinion is not consistent with his examination report of [Plaintiff], in which he noted some anxiety and lability but then went on to note relatively normal mental status findings." AT 993. Plaintiff argues that this reason was rejected by the Court in 2020, and that the ALJ here is relying on some unremarkable findings while ignoring other that support a different conclusion. Pl. MSJ at 10. Defendant argues that the objective medical evidence did not corroborate Dr. Kalman's conclusions about Plaintiff's mental limitations and that the ALJ acknowledged significant mood and affect findings. Def. MSJ 5.

The ALJ did not rely on certain findings and ignore other findings as Plaintiff contends. The ALJ described Dr. Kalman's report in detail (AT 660), and also described his medical source statement (AT 661). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, the ALJ found that Dr. Kalman's narrative opinion was not consistent with his examination report. AT 993. This is a valid reason to give Dr. Kalman's opinion little weight. *See Hunt*, 954 F. Supp. 2d at 1188 (finding a valid reason to discount an opinion when a doctor's treatment notes do not support the severe limitations included in his opinion). Therefore, this is a specific and legitimate reason to reject Dr. Kalman's

opinion.

#### 4. Lack of Mental Health Treatment

The last reason the ALJ provides to award Dr. Kalman's opinion little weight is that his "opinion is not consistent with [Plaintiff's] lack of mental health treatment, aside from medications prescribed by her primary care physician." AT 993. Defendant concedes that this does not constitute substantial evidence to discount Dr. Kalman's opinion. Def. MSJ at 6. Accordingly, the Court will not address this issue, and finds that this is not a specific and legitimate reason to reject Dr. Kalman's opinion.

The Court finds that two of the reasons the ALJ provided to reject Dr. Kalman's opinion are invalid. However, because the ALJ presented other valid reasons that are specific and legitimate to give Dr. Kalman's opinion little weight, any error is harmless. *See Grammer v. Berryhill*, 706 F. App'x 383, 384 (9th Cir. 2017); *see also Molina*, 674 F.3d at 1115.

#### 5. Harmless Error

Even if the ALJ did err when analyzing Dr. Kalman's opinion, this error was harmless. A court may not reverse an ALJ decision due to a harmless error. *Molina*, 674 F.3d at 1111. An error is harmless where it is inconsequential to the ALJ's ultimate nondisability determination. *Id.*; *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The party appealing the ALJ's decision bears the burden of establishing harm. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

Even if the ALJ had given Dr. Kalman's opinion more weight, based on the record, it likely would not have changed the ALJ's opinion. *See Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Both Dr. Funkenstein and Dr. Haroun reviewed Dr. Kalman's opinion when making their own opinions, and both found that Plaintiff had mental status examination within normal limits. *See* AT 286, 301. The ALJ thoroughly described and referred to Dr. Kalman's report in her opinion. *See* AT 986-87, 990, 992. Critically, Dr. Kalman does not opine that Plaintiff is severely impaired. He opined that "[b]ased on today's evaluation, [Plaintiff] is able to understand, remember

and perform simple written and oral instructions," and had decreased ability in various areas. AT 661. This is <u>consistent</u> with the ALJ's findings that Plaintiff was mildly limited in understanding, remembering or applying information and adapting or managing oneself; and moderately limited in interacting with others and concentrating, persisting or maintaining pace. AT 986-87. Plaintiff fails to identify how giving Dr. Kalman's report more weight would have changed the ALJ's determination, failing to meet Plaintiff's burden to establish harm. *See Shinseki*, 556 U.S. at 409-10.

## V.   CONCLUSION

Having addressed all of the points of error raised by Plaintiff, the Court finds the ALJ's decision is otherwise supported by substantial evidence in the record and free from legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

## ORDER

Accordingly, the Court ORDERS:

1. Plaintiff's motion for summary judgment (ECF No. 11) is DENIED;
2. The Commissioner's cross-motion (ECF No. 17) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of the Court is directed to CLOSE this case.

Dated: February 27, 2025

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

5, thre.2199.23.SS